Matter of Freyer v Macruari (2025 NY Slip Op 00217)

Matter of Freyer v Macruari

2025 NY Slip Op 00217

Decided on January 15, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on January 15, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
WILLIAM G. FORD
HELEN VOUTSINAS
JAMES P. MCCORMACK, JJ.

2023-07493
 (Docket Nos. V-10264-17/22D, V-10264-17/22E, V-10264-17/22F)

[*1]In the Matter of Crystal Freyer, respondent,
v
Philip Macruari, appellant. (Proceeding No. 1.)
In the Matter of Philip Macruari, appellant,
Crystal Freyer, respondent. (Proceeding No. 2.)

The Law Office of Robert H. Montefusco, P.C., Hauppauge, NY, for appellant.
The Law Office of Glass & Rau, P.C., Babylon, NY (Kelly Rau of counsel), for respondent.
Jordan M. Freundlich, Lake Success, NY, attorney for the child.

DECISION & ORDER
In related proceedings pursuant to Family Court Act article 6, the father appeals from an order of the Family Court, Suffolk County (Alfred C. Graf, J.), dated July 31, 2023. The order, after a hearing, in effect, granted the mother's petition to modify the custody provisions of the parties' so-ordered custody/parenting time agreement dated March 19, 2018, so as to award her sole legal custody of the parties' child, denied that branch of the father's petition which was to modify the custody provisions of the parties' so-ordered custody/parenting time agreement dated March 19, 2018, so as to award him sole legal custody of the child, limited the father's parental access with the child to contact through OurFamilyWizard and FaceTime, and prohibited the father from filing any further modification petitions without the permission of the Family Court.
ORDERED that the order is modified, on the facts and in the exercise of discretion, by deleting the provision thereof prohibiting the father from filing any further modification petitions without the permission of the Family Court; as so modified, the order is affirmed, without costs or disbursements.
The parties are the divorced parents of one child, born in 2009. In a so-ordered custody/parenting time agreement dated March 19, 2018 (hereinafter the agreement), the parties agreed to joint legal custody of the child, with residential custody to the mother and certain parental access to the father. In 2022, the mother filed a petition to modify the agreement so as to award her sole legal custody of the child. The father filed a petition, inter alia, to modify the agreement so as to award him sole legal custody of the child. After a hearing, the Family Court, in effect, granted the mother's petition, denied that branch of the father's petition, limited the father's parental access with the child to contact through OurFamilyWizard and FaceTime, and prohibited the father from filing any further modification petitions without the permission of the court. The father appeals.
"In order to modify an existing custody or parental access arrangement, there must [*2]be a showing of a change in circumstances such that modification is required to protect the best interests of the child" (Matter of Martinez v Gaddy, 223 AD3d 816, 817; see Matter of Gold v Khalifa, 223 AD3d 803, 804). "The paramount concern when making such a determination is the best interests of the child under the totality of the circumstances" (Matter of Martinez v Gaddy, 223 AD3d at 817). "Since the Family Court's determination with respect to custody and parental access depends to a great extent upon its assessment of the credibility of the witnesses and upon the character, temperament, and sincerity of the parties, its findings are generally accorded great deference and will not be disturbed unless they lack a sound and substantial basis in the record" (Matter of Bristow v Patrice, 221 AD3d 684, 685).
"[J]oint custody is encouraged primarily as a voluntary alternative for relatively stable, amicable parents behaving in mature civilized fashion" (Matter of Robinson v Mustakas, 214 AD3d 880, 880 [internal quotation marks omitted]). Accordingly, "[e]vidence of a hostile relationship between the mother and the father indicating that joint decision-making is untenable is a change of circumstances" (Matter of Pierce v Caputo, 214 AD3d 877, 878-879; see Matter of Gold v Khalifa, 223 AD3d at 804).
Here, the record demonstrates that during the six months preceding the filing of the mother's petition, the parties' relationship deteriorated to a point where there was no meaningful communication or cooperation between them for the sake of the child. The deterioration of the parties' relationship was a change in circumstances warranting a modification of the joint legal custody arrangement (see Matter of Gold v Khalifa, 223 AD3d at 804; Matter of Freeborn v Elco, 188 AD3d 677, 679). The Family Court properly determined that the parties' acrimony toward each other and the father's demonstrated inability to cooperate on matters concerning the child made continued joint legal custody inappropriate (see Matter of Gold v Khalifa, 223 AD3d at 804-805; Matter of Robinson v Mustakas, 214 AD3d at 881). Further, there is a sound and substantial basis in the record for the court's determination to award sole legal custody to the mother. The evidence adduced at the hearing indicated that the mother was better suited to provide for the child's overall well-being and that awarding her sole legal custody was, therefore, in the child's best interests (see Matter of Martinez v Gaddy, 223 AD3d at 818). The evidence demonstrated that the mother, as the child's primary caretaker, made appropriate day-to-day decisions for the child, while the father appeared to be guided by his anger toward the mother, the child, and other family members rather than by the child's well-being (see Matter of Zambas v Condon, 227 AD3d 729, 731; Matter of Robinson v Mustakas, 214 AD3d at 881).
Accordingly, the Family Court properly, in effect, granted the mother's petition to modify the agreement so as to award her sole legal custody of the child and denied that branch of the father's petition which was to modify the agreement so as to award him sole legal custody of the child.
"Parental access with a noncustodial parent is presumed to be in the best interests of a child; however, that presumption may be rebutted through a showing, by a preponderance of the evidence, that parental access would be harmful to the child" (Matter of Mazo v Volpert, 223 AD3d 907, 909 [internal quotation marks omitted]). "The determination of appropriate parental access is entrusted to the sound discretion of the Family Court, and such determination will not be set aside unless it lacks a sound and substantial basis in the record" (Matter of Walker v Sterkowicz-Walker, 203 AD3d 1167, 1168; see Matter of Mazo v Volpert, 223 AD3d at 909).
Here, the deterioration of the child's relationship with the father and the child's strong desire not to have parental access time with the father constituted a sufficient change in circumstances warranting an inquiry into whether modification of the father's parental access was necessary to ensure the best interests of the child (see Matter of Mazo v Volpert, 223 AD3d at 909). Further, there is a sound and substantial basis in the record for the Family Court's determination that it was in the child's best interests to limit the father's parental access with the child to contact through OurFamilyWizard and FaceTime. A preponderance of the evidence adduced at the hearing demonstrated that continued therapeutic parental access with the father would be harmful to the child's well-being. The record indicates that the father's therapeutic parental access with the child was halted because of the father's behavior, and that the child was angry, upset, and crying after therapy sessions with the father. Furthermore, although not controlling, the court was entitled to place great weight on the child's wishes due to her age and maturity (see id.; Matter of Khan v [*3]Schwartz, 201 AD3d 718, 719).
The father's claim that the Family Court was biased against him is unpreserved for appellate review. "A party claiming court bias must preserve an objection and move for the court to recuse itself" (Matter of Baby Girl Z. [Yaroslava Z.], 140 AD3d 893, 894; see Matter of Goundan v Goundan, 210 AD3d 1087, 1089). In any event, when a claim of bias is raised, the inquiry on appeal is limited to whether the court's "bias, if any, unjustly affected the result to the detriment of the complaining party" (Matter of Bowe v Bowe, 124 AD3d 645, 646; see Matter of Gregoire v Yadram, 177 AD3d 616, 618). Here, a review of the record demonstrates that the court listened to the testimony, treated the parties fairly, and did not have a predetermined outcome of the case in mind during the hearing (see Matter of Goundan v Goundan, 210 AD3d at 1089; Matter of Gregoire v Yadram, 177 AD3d at 618).
However, the Family Court improvidently exercised its discretion in prohibiting the father from filing any further modification petitions without the permission of the court. "While public policy generally mandates free access to the courts, a party may forfeit that right if he or she abuses the judicial process by engaging in meritless litigation motivated by spite or ill will" (Matter of Parascondola v Romano, 213 AD3d 768, 770 [citations and internal quotation marks omitted]; see Matter of Knauss v Elman, 171 AD3d 1067, 1068). Here, there is no basis in the record to demonstrate that the father filed frivolous petitions or filed petitions out of ill will or spite (see
Matter of Parascondola v Romano, 213 AD3d at 770; Matter of Genao-Archibald v Archibald, 208 AD3d 1185, 1187).
The father's remaining contentions either are without merit or do not require reversal.
IANNACCI, J.P., FORD, VOUTSINAS and MCCORMACK, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court